**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5128**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

GEOFFREY HAROLD HARVEY,

                    Defendant - Appellant.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph R. Goodwin,
Chief District Judge.  (2:07-cr-00033-1)

Argued:  March 25, 2009                 Decided:  May 6, 2009

Before MICHAEL, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Robert Bungard, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.  Lisa Grimes
Johnston, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West
Virginia, for Appellee.  **ON BRIEF:** Mary Lou Newberger, Federal
Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF
THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for
Appellant.   Charles  T.  Miller,  United  States  Attorney,
Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Geoffrey Harold Harvey ("Harvey") appeals the judgment of the United States District Court for the Southern District of West Virginia at Charleston, which sentenced Harvey to a term of 309 months' imprisonment for violation of 18 U.S.C. § 924(c)(1)(A)(iii) (2000). Harvey contends that the sentence is greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), and that the district court abused its discretion when imposing a substantial upward sentencing variance. For the following reasons, we affirm the judgment of the district court.

I.

A.

On November 13, 2006, Harvey broke into a residence near his home in Logan County, West Virginia, and stole a sawed-off shotgun and another firearm and ammunition. Later that day, Harvey entered the Family Discount Pharmacy ("pharmacy") armed with the stolen firearms. Harvey pointed the sawed-off shotgun at the cashier and fired into a cabinet next to her, but she was not injured.

Although many of the customers and employees escaped, Harvey took four employees and two customers hostage at gunpoint in a small office of the pharmacy. He ordered one of the

2

hostages to obtain Lortab, Oxycontin, and Xanax pills from the pharmacy for him. He proceeded to crush and snort the pills, by all accounts intending to cause his own death.

Harvey then directed one of the hostages to call 911. He ordered the hostage to tell the 911 operator that "[i]f the police come he's going to kill us all." (JA 70). Harvey fired the sawed-off shotgun a total of four times during the course of a two-hour period while he held the hostages captive. Based on the victims' reports, he threatened the hostages with death if they tried to escape. Throughout the ordeal, the hostages believed that the defendant was going to kill them and prepared themselves for impending death.

Eventually, the pills that Harvey took began to take effect, and one of the hostages was able to grab the shotgun and hit him over the head. Law enforcement officers entered the pharmacy, rescued the hostages, and arrested Harvey.

B.

Harvey was charged in a two-count indictment in the Southern District of West Virginia at Charleston. Count One charged Harvey with armed robbery of a pharmacy in violation of 18 U.S.C. §§ 2118(a) and 2118(c)(1). Count Two charged Harvey with "us[ing], carry[ing] and discharg[ing] a firearm . . . during and in relation to a crime of violence . . . while

3

committing a pharmacy robbery . . . [i]n violation of 18 U.S.C. § 924(c)(1)(A)(iii)." (JA 10). Harvey pled guilty to both charges without a plea agreement.

In preparing the Presentence Investigation Report ("PSIR"), the probation officer concluded that, with regard to Count One, Harvey had a total offense level of 22. Harvey's base offense level was 20 under U.S. Sentencing Guidelines Manual § 2B3.1 (2008), with a four-level increase under § 2B3.1(b)(4)(A) because victims were abducted to facilitate the offense, a one-level increase pursuant to § 2B3.1(b)(6) because Harvey stole controlled substances, and a three-level decrease under § 3E1.1 for acceptance of responsibility, as evidenced by his guilty plea. Factoring in Harvey's Category I criminal history level, his total offense level resulted in a sentencing range of 41 to 51 months as to Count One. With regard to Count Two, the probation officer concluded that the Guideline sentence was the minimum ten year sentence statutorily prescribed by 18 U.S.C. § 924(c)(1)(A)(iii) (2006).

According to the PSIR, Harvey had a long history of substance abuse and mental health issues including a history of suicidal and violent behavior. He admitted that he is hostile with others, abusive to his girlfriend, and has raped her. Harvey has been subjected to involuntary psychiatric hospitalizations several times throughout the last decade.

4

During a 2006 hospitalization he was diagnosed with bipolar disorder, polysubstance abuse, attention deficit hyperactivity disorder, and antisocial personality disorder.

During the sentencing hearing, the district court heard from four of the hostage victims. Each victim testified that they feared for their lives throughout the standoff, and believed that Harvey "would have killed us if we had not gotten out." (JA 212). Each victim testified that they had lasting traumatic emotional effects from the event.

Dr. Ryan Finkenbine testified that Harvey suffered from several mental health disorders at the time of the offense, including polysubstance abuse, mood disorder, depression, and anxiety disorder, and that he did intend to kill himself that day. Dr. Finkenbine admitted that Harvey's "severe depression was self-induced" because "it was caused by the fact that he chose to use drugs and was addicted to drugs." (JA 281). Further, Dr. Finkenbine testified that, according to Dr. Rosemary Smith's report, at the time of the offense, Harvey was not suffering from a mental disease that would have prevented him from appreciating the wrongfulness or nature of his acts, and that he was capable of making decisions, forming intent, and weighing alternatives. Dr. Finkenbine concluded that, although there were factors that "make[] [Harvey] more dangerous than the

5

general person walking on the street, . . . some factors . . . make him less dangerous." (JA 271-72).

The district court sentenced Harvey to 51 months' imprisonment on Count One, 309 months' imprisonment on Count Two, a five year term of supervised release, and ordered Harvey to pay restitution in the amount of $4,914.24. Although the district court noted that the sentence for Count Two constituted a significant upward variance from the ten year statutory minimum, it concluded that the sentence was appropriate under the §3553(a) factors because Harvey is "dangerous to himself," "dangerous to others," (JA 292) and because "the offense demonstrates a complete and utter disregard for the value of human life." (JA 293). In arriving at a "just sentence" the district court also "considered the long-lasting personal and emotional injuries incurred by the victims," (JA 295), what it found was little remorse on the part of Harvey, and ultimately determined that the sentence was "not greater than necessary to achieve the sentencing goals as set out in 3553(a)." (JA 297). The district court stated that "this sentence reflects the seriousness of the offense, provides just punishment, and will promote respect for the law. It reflects the nature and circumstances of the offense . . . and the history and the characteristics of the defendant . . . ." (JA 297-98).

6

II.

On appeal, Harvey argues that the imposition of a 309-month sentence for Count Two was unreasonable in light of the purposes of § 3553(a) because the district court failed to find that his mental health conditions and the treatability of those conditions necessitated a sentence on the lower end of the Guideline range.[1]

On appeal, this Court's review of a district court's sentence is deferential and governed by the abuse of discretion standard. Gall v. United States, ___ U.S. ___, 128 S. Ct. 586, 597 (2007). The Court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

---

[1] Harvey did not appeal the 51-month sentence he received for Count One, the term of supervised release, or the order of restitution. Accordingly, none of these are before us in this appeal and the district court's judgment as to those matters is final.

A.

The issue in this case is whether the 309-month sentence as to Count Two is substantively reasonable,[2] or whether the district court abused its discretion in deciding that the § 3553(a) factors supported an upward variance from the ten year statutory minimum sentence.  Id.  For sentences outside of the Guidelines range, a district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. . . . a major departure should be supported by a more significant justification than a minor one." Gall, 128 S. Ct. at 597. Although we may presume on appeal that a sentence imposed within the properly calculated Guidelines range is reasonable, United States v. Go, 517 F.3d 216, 218 (4th Cir. 2008), we may not apply a presumption of unreasonableness to sentences outside the Guideline range. Gall, 128 S. Ct. at 597.  Instead, the Supreme

---

[2] The initial matter for appellate review is to ensure that the sentencing court did not commit procedural error in calculation of the sentence, such as "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) [(2006)] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597.  Appellant does not argue procedural error on brief, nor is the argument encompassed in the issue for review; it is therefore waived. See Cavallo v. Star Enterprise, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).  Regardless, no procedural error appears in the record.

8

Court in <u>Gall</u> explained that the reviewing court should "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." <u>Id.</u>

Harvey argues that "[t]he district court abused its discretion by imposing a sentence 157% greater than that recommended by the Guidelines . . . ." (Br. 14). He contends that his sentence is substantively unreasonable because it is greater than necessary to comply with the purposes of § 3553(a).

> Specifically, it is greater than needed to "afford adequate deterrence to criminal conduct," . . . "protect the public from further crimes of the defendant," where the mental health issues that underlined Harvey's behavior are treatable; and "reflect the seriousness of the offense" and "to provide just punishment for the offense," where the offense, while serious and dangerous, did not result in any physical injury.

(Br. 19 (quoting § 3553(a)(2)) (internal citations omitted)).

Harvey contends that his "criminal conduct was the culmination of a long history of self-destructive behavior fueled by mental illness," and "[t]hat mental illness, which undisputed expert testimony showed was treatable, was not adequately considered by the district court . . . ." (Br. 14). Harvey asserts that the need to protect the public and deter criminal conduct is diminished because of the treatable nature of his mental illness. Relying on a Seventh Circuit opinion, <u>United States v. Miranda</u>, 505 F.3d 785 (7th Cir. 2007), Harvey claims that the district court failed to sufficiently examine

9

how Harvey's mental health, and specifically his potential for treatment, relate to the factors under § 3553(a).

## B.

The record reflects that the district court considered the § 3553(a) factors, as well as the testimony of Dr. Finkenbine, and made "an individualized assessment based on the facts presented." Gall, 128 S. Ct. at 597. The district court focused on several main points in arriving at the sentence for Count Two. First, the court emphasized the violent nature of the offense. Second, the court stressed the impact on the victims and the long-lasting emotional effects. Lastly, the court sufficiently and comprehensively evaluated Harvey's own characteristics, including his lack of remorse, his capacity for violence, and the factor of his mental health.

The district court described the factual details of the offense, including that Harvey stole the weapons, purposefully fired the shotgun to show that he "meant business," and that he "repeatedly threatened to kill the hostages if police were summoned or a hostage attempted to escape . . . ." (JA 292-93). Harvey fired four shots while "he held those six hostages in a very small and cramped office." (JA 293). The court concluded that "Harvey's crime, the nature of it, . . . demonstrates a complete and utter disregard for the value of human life. The

10

offense was deliberate. It was malicious. Throughout the ordeal, the hostages believed that the defendant was going to kill them and prepared themselves for impending death." (JA 293). The district court pointed out that the sentence imposed was based on these considerations, and that the court "considered the effects of the violent abduction" in determining an appropriate sentence. (JA 293).

The district court also placed great weight on the testimony of the victims of Harvey's crime, stating that it "considered the long-lasting personal and emotional injuries incurred by the victims in arriving at a just sentence." (JA 295). The court noted that "[w]ithout exception, each hostage believed they would be murdered. Each victim continues . . . to suffer from the trauma according to their own words in court." (JA 295-96). Specifically, the court indicated that one victim could not return to work, another "continues to receive mental health counseling and is prescribed both anti-depressants and anxiety medication," and all of the victims "report being afraid of crowds, public places." (JA 296). The pharmacist "reiterated that Mr. Harvey not only changed the victims' lives, but in the end showed absolutely no remorse." (JA 296).

Even though Harvey received a reduction of one level for acceptance of responsibility because of his guilty plea, the court found he did not show any meaningful level of remorse.

11

During the hearing, Harvey was quoted as stating, in reference to his crime, "[i]t wasn't me. It was the other me." (JA 296). The district court also cited a victim's testimony that Harvey made the "unrepentant statement" that he "would have been meaner so, so he could have controlled them more . . . given another opportunity." (JA 296).

The district court also properly took into account Harvey's characteristics, as related by Dr. Finkenbine and the medical records.[3] The court noted Harvey's "history of aggressive and suicidal behaviors which have led to several involuntary psychiatric hospitalizations" (JA 294) and Harvey's "severe and long-term polysubstance abuse." (JA 294). In particular, the court reviewed "the medical histories submitted as evidence" (JA 298) and Harvey's own statements as to his mental health and

---

[3] Harvey contends that the district court misconstrued at least one of Dr. Finkenbine's statements, and that "[t]o the extent that the district court's sentence was based on its misunderstanding of Dr. Finkebine's conclusion, it was an abuse of discretion . . . ." (Br. 22). The district court concluded that Dr. Finkenbine's opinion was that Harvey "poses a greater risk for the likelihood of dangerous behavior than a person in the general population." (JA 294). Dr. Finkenbine testified that some factors "make[] [Harvey] more dangerous than the general person walking in the street, and some factors . . . make him less dangerous. That is, he does not fall in a group of more dangerous people." (JA 271-72). This statement is confusing and open to interpretation. The district court did not clearly err in concluding that Harvey poses a greater risk of dangerous behavior than someone in the general population, based on Dr. Finkenbine's conclusion that "some factors" do make him "more dangerous than the general person."

12

capacity for extreme violence. The court cited statements by Harvey that he is "uncontrollable at times, bad temper, hurt myself all the time [sic]," that he "has bad thoughts, wants to hurt people, and also beat a man to death with a ball bat," and that he reported as far back as 1975 that he "had a very bad temper, that he drinks all the time, and that he hits people." (JA 294-95). The district court also noted that the record demonstrates a "history of raping his girlfriend and a history of domestic violence." (JA 294). Any contention that the district court did not consider Harvey's characteristics, particularly his mental health and history of mental illness, is without merit.

After engaging in appropriate fact-finding, the district court referenced the § 3553(a) factors, their application to Harvey, and noted that the court "carefully considered whether the guideline sentence would be sufficient to meet the ends of justice," concluding that "this severe sentence is required to meet the ends of justice." (JA 297). The court "considered the horrific nature of the crime, a lengthy period of being held captive and subjected to threats of death . . ., [and] the lasting effect of the criminal conduct upon the victims . . . ." (JA 297). The court then concluded that the sentence given promoted the relevant statutory goals because it "reflects the seriousness of the offense, provides just punishment, and will

13

promote respect for the law. It reflects the nature and circumstances of the offense . . . and the history and the characteristics of the defendant . . . ." (JA 297).

## C.

Harvey finally argues that "the district court in this case did not sufficiently examine how Harvey's mental illnesses and their potential response to treatment interact with § 3553(a)'s command to consider the issue of deterrence." (Br. 20). Consequently, Harvey contends the district court's variant sentence amounted to an abuse of discretion and cites to the Seventh Circuit decision in Miranda, which held, under the facts of that case, that "[i]f the mental illness is treatable . . . the goal of incapacitation may not be advanced by a heavy sentence." Miranda, 505 F.3d at 793. Harvey posits that Miranda is applicable to his case because Dr. Finkenbine "testified that had Harvey not been suffering from mental illness, it was unlikely that he would have committed the offenses" and that he "testified that treatments were available to address Harvey's illnesses." (Br. 20).

In Miranda, the defendant pled guilty to bank robbery and argued for a below-guidelines sentence because he "suffered from severe mental illness and that his mental illness was a substantial factor in committing his crime." Miranda, 505 F.3d

14

at 789-90. The psychiatric report introduced at sentencing diagnosed Miranda with Schizoaffective Disorder and the psychiatrist testified that Miranda suffered from auditory hallucinations, which were not caused by drug use, and he was hallucinating at the time of the crime. Id. at 788.

We find Harvey's argument unpersuasive. Not only is Miranda not persuasive authority in this Circuit, it is also readily distinguishable from the case at bar.

First, Miranda argued specifically to the district court for a below-Guidelines sentence based on his diminished capacity under § 5K2.13.[4] The Seventh Circuit found that the district court "did not directly address these non-frivolous arguments" Miranda, 505 F.3d at 786, and concluded that "when a court gives little or no attention to the defendant's principal argument when that argument 'was not so weak as not to merit discussion,' we cannot have confidence that the judge adequately considered the section 3553(a) factors." Id. at 792 (citations omitted). By contrast, Harvey specifically disclaimed any diminished

---

[4] Although "[t]he concept of departures has been rendered obsolete in post-Booker sentencing . . . the district court may apply those departure guidelines by way of analogy in analyzing the section 3553(a) factors." Miranda, 505 F.3d at 792 (citing United States v. Johnson, 427 F.3d 423, 426 (7th Cir. 2005)).

15

capacity departure[5] under the Guidelines at the sentencing hearing: "we aren't asking for a departure on diminished capacity or any other mental health issue." Had Harvey asked for such a departure, § 5K2.13 would not provide him any relief because a diminished capacity departure does not apply if reduced capacity "was caused by the voluntary use of drugs . . . ." § 5K2.13. By all accounts Harvey was a drug addict, and the uncontroverted testimony of his own expert stated that "the major cause of his severe depression was his drug use." (JA 275).

Miranda is also distinguishable from the instant case because the defendant there established his crime was caused by his diagnosed condition because he was hallucinating at the time he committed it. Moreover, the hallucinations were not self induced by the defendant's intentional acts such as Harvey's intentional drug use. See Miranda, 505 F.3d at 789. By contrast, there is no evidence Harvey's crime was caused by any diagnosed condition. To the contrary, the opinion of one psychologist was that Harvey "had no mental disease or defect which would have prevented him from appreciating the

---

[5] In his Sentencing Memorandum, Harvey specifically stated that he "would ask this Court to consider imposing a sentence at the low end of his advisory guideline range for the robbery offense (Count One) and the mandatory minimum sentence of ten years for . . . Count Two . . . ." (JA 50).

wrongfulness of his acts." (JA 276). Thus, not only is <u>Miranda</u> distinguishable and inapplicable to the case at bar, the earlier recital of the district court's review of Harvey's medical history supports the conclusion that we can be "confident that the court gave these arguments adequate consideration." <u>See</u> <u>Miranda</u>, 505 F.3d at 792-93.

Accordingly, we conclude the district court did not abuse its discretion in rendering the 309-month sentence on Count Two.

III.

For the foregoing reasons, the district court's judgment is

<u>AFFIRMED</u>.