NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2009
Decided January 4, 2010

**Before**

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 08-3913

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>*v.*<br><br>ROBERT L. GIPSON,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 08-CR-37-C-01<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Robert Gipson pleaded guilty to possession of crack cocaine with intent to distribute it, *see* 21 U.S.C. § 841(a)(1), and the district court imposed a within-guidelines sentence of 78 months' imprisonment. On appeal Gipson argues that the district court failed to give adequate consideration to his mental condition as a mitigating factor under 18 U.S.C. § 3553(a). We affirm Gipson's sentence.

In January 2008 a confidential informant tipped off law-enforcement agents that Gipson was selling crack in Madison, Wisconsin. According to the informant, Gipson traveled regularly to Chicago to buy the drug, which he repackaged for individual sale and stored in the basement of a Madison apartment building. Based on the tip, officers orchestrated two controlled purchases of crack from Gipson and arrested him shortly

thereafter. Officers found marijuana and crack in the glove box of Gipson's car and 108 individually wrapped packages of crack in his pocket. They later uncovered—hidden behind insulation in a basement wall of the Madison apartment building linked to Gipson—more crack and prerecorded currency from the controlled buys.

After determining that the offense conduct included 38.74 grams of crack, the probation officer calculated a base offense level of 28. *See* U.S.S.G. § 2D1.1(c)(6). A three-level reduction for acceptance of responsibility and a criminal-history category of III produced a guidelines imprisonment range of 70 to 87 months.

At sentencing Gipson argued that the court should consider as mitigating factors his physical and mental impairments. Gipson had a brain tumor removed when he was 13, and he reported that he has suffered seizures once a week ever since. Gipson also has a history of mental illness. In 2004, during a court-ordered competency evaluation in a previous proceeding, the psychiatrist noted that Gipson demonstrated "delusional and paranoid" behavior and diagnosed him as a cocaine abuser with schizoaffective and bipolar disorders. Gipson initially was declared incompetent to stand trial in that case, but he improved with medication and later was found competent to continue with the proceedings. By that time, however, the government had dismissed the charge (possession with intent to distribute crack). When Gipson underwent a fresh competency evaluation in this case, he again was diagnosed with schizoaffective disorder and cocaine abuse, as well as borderline intellectual functioning. After he was prescribed medication, the psychiatrist determined that his schizoaffective disorder was "in remission with pharmacotherapy" and concluded that he was competent to face the proceedings.

Gipson argued at sentencing that his health conditions—schizoaffective and bipolar disorders, seizures, and low-level mental functioning—are a "limiting dynamic force that he is dealing with when he makes [the] judgment to be a drug dealer." Gipson did not elaborate or present evidence to support his contention that these illnesses played a role in the commission of his crime. Rather, he argued generally that the court should take his impairments into account under 18 U.S.C. § 3553(a) and impose a below-guidelines sentence.

The district court declined. The court acknowledged that Gipson has "some problems, physical and mental" but noted that he nevertheless had "managed to cut a wide swath as a drug dealer." After concluding that a sentence in the middle of the guidelines range was "reasonable and no greater than necessary" to hold Gipson accountable, protect the community, provide Gipson the opportunity for rehabilitative programs, and achieve parity with similarly situated offenders, the court sentenced him to 78 months' imprisonment.

We review sentences for reasonableness, using an abuse-of-discretion standard. *United States v. Deloney*, 578 F.3d 690, 692 (7th Cir. 2009). A sentence within the properly calculated guidelines range is presumed reasonable on appeal. *United States v. Mendoza*, 576 F.3d 711, 723 (7th Cir. 2009). Nevertheless, we must be confident that the district judge gave individualized attention to the § 3553(a) factors and adequately considered the defendant's nonfrivolous arguments for a below-guidelines sentence. *See United States v. Williams*, 553 F.3d 1073, 1084-85 (7th Cir.), *cert denied*, 129 S. Ct. 2452 (2009); *United States v. Miranda*, 505 F.3d 785, 792-93 (7th Cir. 2007).

On appeal Gipson argues that the district court abused its discretion when it rejected his assertion that his medical/mental conditions warranted a below-guidelines sentence. Mental and physical impairments are not ordinarily relevant in determining whether a below-guidelines sentence is warranted. U.S.S.G. §§ 5H1.3, 5H1.4; *see Miranda*, 505 F.3d at 792 (explaining that concept of downward departure is obsolete post-*Booker*, but that departure guidelines may still be applied by way of analogy in analyzing § 3553(a) factors). An "extraordinary physical impairment," however, may be a reason for a lower sentence, U.S.S.G. § 5H1.4; *United States v. Poetz*, 582 F.3d 835, 838 (7th Cir. 2009), and so may a defendant's significantly reduced mental capacity, if it contributed substantially to the commission of the offense, U.S.S.G. § 5K2.13; *United States v. Jackson*, 547 F.3d 786, 795 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 1538 (2009).

We have recognized severe mental illness, including schizoaffective disorder, as a ground for a sentencing discount because it may reduce the need for deterrence or punishment and thus render a long term of imprisonment less appropriate. *See United States v. Anderson*, 547 F.3d 831, 832 (7th Cir. 2008); *Miranda*, 505 F.3d at 792-94. In *Miranda*, for example, we remanded for resentencing when the district court failed to address the defendant's arguments for a below-guidelines sentence on the basis of diminished mental capacity despite evidence that the defendant's schizophrenia and auditory hallucinations were the primary force driving him to commit the crime. *Miranda*, 505 F.3d at 787-89, 794. *See also Williams*, 553 F.3d at 1084-85 (remanding where district court failed to address defendant's arguments that his reduced intellectual capacity made him more susceptible to manipulation by his brother, the ringleader of the criminal activity); *United States v. Cunningham*, 429 F.3d 673, 676-80 (7th Cir. 2005) (remanding where district judge made no mention of diminished mental capacity as possible mitigating factor despite evidence that defendant's long history of psychiatric illness and alcohol and marijuana abuse made him more prone to commit the crime). On the other hand, we have declined to remand on the basis of the district court's terse rejection of a diminished-capacity sentencing argument when that argument was undeveloped or lacked a factual basis. *See Jackson*, 547 F.3d at 795-96.

In this case, Gipson presented no evidence that his impairments contributed substantially to the commission of the offense. He argued generally that his mental illness affects the "soundness of the judgment that leads him to criminal activity," but did not explain why his medical condition made him more likely to sell drugs. Indeed, the doctor who performed Gipson's most recent competency evaluation noted that his psychiatric history was "unremarkable" until 2003, yet his drug convictions date back as far as 1993. Moreover, Gipson did not raise any specific arguments that his mental illness reduced the need for deterrence or that incapacitation was unnecessary in light of the fact that his schizoaffective disorder was in remission with proper medication. *See Miranda*, 505 F.3d at 793.

Although the district judge could have said more, the record sufficiently confirms that the court gave meaningful consideration to Gipson's arguments. The court acknowledged that Gipson suffered from physical and mental impairments but implicitly concluded that they had not played a role in the commission of the offense. In considering the § 3553(a) factors, the court noted that prior sanctions had not deterred Gipson from criminal activity, that he had demonstrated significant finesse as a drug dealer, and that the relevant conduct used to calculate his offense level likely was extremely conservative in light of a statement from his female companion that she had accompanied him on several hundred drug sales. Given Gipson's vague argument for mitigation—which was unsupported by any evidence demonstrating the link between his mental illness and his drug dealing—the district court's weighing of the § 3553(a) factors was not unreasonable.

Accordingly, we AFFIRM the judgment of the district court.