In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3159

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VERNA PILON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 129 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 19, 2013 — DECIDED OCTOBER 30, 2013

Before MANION, KANNE, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* After eight witnesses had testified
at her jury trial, Verna Pilon pleaded guilty to five counts of
wire fraud in connection with a Ponzi scheme she ran with her
husband. At sentencing, the district court denied credit for
acceptance of responsibility, applied an enhancement for abuse
of a position of trust, and sentenced her to 78 months' incarcer-
ation. On appeal, Pilon argues that the district court erred in
denying credit for acceptance of responsibility, in applying an

enhancement for abuse of a position of trust, and by ignoring mitigation arguments that her attorney made at sentencing. In addition to these procedural arguments, Pilon also argues that her 78-month sentence was substantively unreasonable. We affirm.

## I. Factual Background

Through companies they operated and controlled, Verna Pilon and her husband James Pilon offered two investment opportunities: the "Mortgage Acceleration Program" and the "Private Placement Program." Pilon falsely represented that the Mortgage Acceleration Program would generate significant returns for investors on their money, such that she would pay the investors' monthly home mortgage payments going forward, completely pay off the outstanding balance on the investors' mortgages within two years, and make a bonus cash payment to investors at the end of the two-year period. Many of the investors in the Mortgage Acceleration Program were already financially struggling so they refinanced their mortgages to get the money necessary to invest in the program, resulting in a higher monthly mortgage payment. With respect to the Private Placement Program, Pilon falsely represented to investors that she would invest their money in a high-yield fund and that the investors would receive between a hundred percent or more on their investments within 90 days or a slightly longer period as a result of the Private Placement Program.

Pilon roped in investors not just by the promise of returns, but also by hinting at religious and humanitarian purposes. Among her companies were "Prayer International" and "Owe

No One International Ministry." Pilon perpetuated the Mortgage Acceleration Program by paying early investors' mortgages with later investors' money (a Ponzi scheme) and she kept the Private Placement Program alive by telling the investors that the program was generating significant returns when it was not. Approximately forty people were lured by Pilon into investing amounts ranging from $4,000 to $110,000. Investors entrusted a total of $1,027,900 to the Pilons. The investment programs were frauds; $967,702 of the investors' funds were lost.

Pilon did not invest the money she received from her investors, but instead used the money in a manner inconsistent with her representations to investors. For instance, she used the money to pay for a 2004 Cadillac Escalade, a $14,000 diamond ring, a $125,000 earnest money payment on a $21 million home in California (purportedly to use as a temple for the Washitaw Nation), hotel stays, airline tickets, and to pay off personal debt. In March 2005, the Illinois Department of Securities ordered Pilon to cease offering investments; she ignored the order. As was inevitable, Pilon's programs eventually unraveled. Her investors—at this point, victims—lost the money they had given her. Additionally, many who had refinanced their mortgages to fund the investments lost their homes.

Pilon was indicted for wire fraud on February 17, 2010. Pilon was a member of a sovereign citizen movement called the Washitaw Nation. As such, Pilon moved to dismiss the indictment against her because she believed that she was not subject to the laws of the United States or to the jurisdiction of its courts. The motion was denied and a jury trial was set for

May 22, 2012. The morning of May 22, right before jury selection was to begin, Pilon informed the district court of her intent to plead guilty to the indictment. The district court conducted a change of plea hearing, and began by informing Pilon of her rights and explaining the statutory guidelines and the maximum penalties. However, when the government proffered the factual basis of her offense, Ms. Pilon denied everything; she denied any knowledge of the fraud, she denied making any representations to investors (stating instead that she followed a script), and she denied knowing that any of the representations were false. The district court told Pilon that she had not admitted guilt and thus the court would not accept her guilty plea. The court then proceeded to select a jury and adjourned for the day.

On May 23, 2012, the district court convened for the first day of Pilon's jury trial. Before the trial began, Pilon's attorney informed the court that Pilon would like to "revisit a possible change of plea," but that the attorney thought it could wait until lunch. The court advised Pilon that, to plead guilty, she would have to admit facts that show guilt. Pilon requested to speak, and the court advised her to consult with her attorney. After speaking with Pilon, her attorney stated they would try the plea at lunch. The parties proceeded to give their opening statements to the jury and eight of the government's witnesses—victims of Pilon's scheme—testified. No change of plea was attempted at lunch. Instead, at the end of the day, the court undertook a second change of plea hearing. The district court again explained Pilon's rights and the sentencing process, and the government proffered the same facts, but this time

Pilon admitted to the scheme and successfully pleaded guilty to the indictment.

On September 6, 2012, the district court held Pilon's sentencing hearing. In calculating Pilon's guideline range, the court applied an enhancement for abuse of a position of trust. Pilon's counsel stated that there was no objection to the enhancement (as he had also represented in Pilon's sentencing memorandum). The district court also declined to credit Pilon for acceptance of responsibility, finding that she did not accept responsibility "until the 11th hour, and that it was not based on true remorse but, rather, upon the reality that she would be convicted." After hearing the sentencing arguments, the court sentenced Pilon to 78 months' incarceration, within the middle of the guideline range, and imposed $967,702 in restitution.

## II. Discussion

On appeal, Pilon contends that the district court erred by (1) denying credit for acceptance of responsibility; (2) applying an enhancement for abuse of a position of trust; (3) failing to adequately consider her mitigation arguments; and (4) sentencing her to a term of incarceration that is substantively unreasonable.

### A. Acceptance of Responsibility

We review the district court's application of the guidelines *de novo* and review its factual determinations for clear error. *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir. 2013). Our precedent is clear that not accepting responsibility until the eleventh hour is a sufficient reason for a district court to deny a defendant credit for acceptance of responsibility. *See United*

*States v. Redmond*, 667 F.3d 863, 874 (7th Cir. 2012). Pilon clearly pleaded guilty well past the eleventh hour, but she attempts to skirt our holdings by contending that the district court's denial of credit was not based on the lateness of her plea, but rather on a clearly erroneous finding of fact. *See United States v. Ritsema*, 31 F.3d 559, 568 (7th Cir. 1994) (reversing where the district court erroneously denied acceptance-of-responsibility credit based on the defendant's refusal to accept responsibility for conduct that was not relevant to the conviction). Specifically, Pilon contends that the district court erred in finding that she did not accept responsibility until after hearing the testimony against her during the first day of trial.

At sentencing, Pilon's attorney relayed to the court that Pilon's first attempt to plead guilty failed because she became angry and upset at her husband when hearing the government's proffer of facts. He stated that Pilon knew that she had inappropriately denied the facts, but that she was ready to plead guilty the morning of May 23, before hearing the testimony against her. Pilon's attorney informed the court that the only reason she did not plead guilty the morning of the second day was to let the government proceed with its out-of-town witnesses who were already present. Nevertheless, the court stated:

> I do think, from what I observed at the trial,
> the fact that it was after the seven witnesses[1]
> who testified each were bringing her closer

---

[1] There were eight, not seven, witnesses, as clarified later by the district court.

and closer into the ambit of the criminal scope of activity that she was becoming more and more aware that there was going to be a conviction.

And so as much as I sympathize with your challenges, I don't think that she accepted responsibility until the 11th hour, and that it was not based upon true remorse but, rather, upon the reality that she would be convicted.

Pilon contends that this finding was clearly erroneous because she had decided to plead guilty, and conveyed that decision to the court through her attorney, the morning of the second day—before hearing any testimony against her.

This contention is meritless. The district court heard Pilon's argument about when she made the decision to plead guilty, but nonetheless found, based on the court's observations of Pilon, that she pleaded guilty only after the testimony of her victims made her face the reality of conviction, not because of remorse. The district court is in the best position to make this determination and, especially given that Pilon had decided to plead guilty the day before, but then denied all the facts, the court's finding is not clearly erroneous.

### B. Abuse of a Position of Trust

Pilon asserts that the district court applied too broad a definition of "position of trust" and therefore erred in finding Pilon occupied such a position. Pilon waived this argument when her attorney stated explicitly on the record that there were no objections to the abuse of trust enhancement and,

instead, focused her argument on acceptance of responsibility. *See United States v. Vasquez*, 673 F.3d 680, 684 (7th Cir. 2012) ("Forfeiture takes place when counsel or a defendant negligently bypasses a valid argument. Waiver, on the other hand, involves an intentional abandonment of a known right.") (citations omitted). The record shows that Pilon abandoned any argument that the enhancement did not apply in the face of an uphill battle for acceptance of responsibility credit. In addition to stating that there were no objections to the enhancement at sentencing, Pilon's sentencing memorandum explicitly says, "The PSR has found that '… the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.' Therefore, two levels are added to the offense level. The defendant accepts this upward adjustment." Taken as a whole, these circumstances evince an intent to abandon the argument that the enhancement did not apply, and it is therefore waived.

Even if this argument was merely forfeited, application of the enhancement was not plain error. The guidelines instruct a district court that, if a defendant "abused a position of public or private trust … in a manner that significantly facilitated the commission … of the offense," the court should increase the offense level by two. U.S.S.G. § 3B1.3. In reviewing a decision to apply the enhancement, we must consider "(1) whether the defendant occupied a position of trust; and (2) whether his abuse of the position of trust significantly facilitated the crime." *United States v. Sierra*, 188 F.3d 798, 802 (7th Cir. 1999). Application Note 1 to § 3B1.3 clarifies that a position of "public or private trust" is one characterized by "substantial discre-

tionary judgment that is ordinarily given considerable defer-ence," and, to clarify what is meant by discretion, the note gives the example of "a bank executive's fraudulent loan scheme," as opposed to "embezzlement or theft by an ordinary bank teller." *Id.* Further, Application Note 3 states that the abuse of a position of trust enhancement "also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust, when in fact, the defendant does not." *Id.* That note provides the example of a "defendant who … perpetrates a financial fraud by leading an investor to believe the defen-dant is a legitimate investment broker." *Id.*

Here, the record shows that Pilon held herself out to her victims as operating and controlling the companies that offered the investment programs, she represented that she had made money for other individuals through the programs, and she promised that if the investors would invest the necessary funds, she would provide them with astronomical returns. Her victims placed their money in her and her husband's programs and their faith in her and her husband's management of the programs. This faith was akin to the trust placed in any investment manager or broker's management of investments. Further, the investors in the Mortgage Acceleration Program relied on Pilon to make their home mortgage payments for them from the investment proceeds.

The district court adopted the presentence report's sum-mary that Pilon "assumed a fiduciary duty in relation to those investors by causing them to believe that they were entering into a contractual agreement with the defendant's business entities." This is an apt summary; her victims entrusted their

money to her discretion, for their benefit. Pilon's other arguments on this enhancement do not require discussion as they do not come close to demonstrating error—plain or otherwise—in the district court's application of the enhancement. *See Vasquez*, 673 F.3d at 684-85 ("Under plain error review, the court reverses only when there is: '(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings.'" (quoting *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010))).

## C. Consideration of Mitigation Arguments

Pilon also argues that the district court did not adequately consider her mitigation arguments in determining her sentence. Specifically, Pilon argued that her poor health and the burden her incarceration would have on her family called for a lower sentence. While the sentencing guidelines are advisory, the district court must apply the sentencing factors. *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007). Two such factors that the court must consider are the "history and characteristics of the defendant" and "the need … to provide the defendant with needed … medical care … in the most effective manner." 18 U.S.C. §3553(a)(1); (a)(2)(d). However, the district court "need not comment on every argument the defendant raises." *Miranda*, 505 F.3d at 792. Rather, "arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005) "But when a court gives little or no attention to the defendant's principal argument when that argument 'was not so weak as not to merit discussion,' we cannot have confidence that the judge adequately considered

the section 3553(a) factors." *Miranda*, 505 F.3d at 792 (quoting *Cunningham*, 429 F.3d at 679). "Mitigating arguments about … general hardships typically do not require any discussion at all." *United States v. Gary*, 613 F.3d 706, 710 (7th Cir. 2010). However, "a sentencing court cannot summarily disregard a defendant's potentially meritorious argument as it relates to extraordinary family circumstances." *Id.* at 711. That is not what happened here.

At the time of her sentencing, Pilon was 60 years old and was suffering from sarcoidosis, asthma, an irregular heartbeat, and fused vertebrae in her spine. She had growths in her eyes that were causing pain and vision problems. Further, she had two high school-age children, one of whom was 19 and had cancer. With her husband also incarcerated, care for these children was left to her eldest daughter, who had three children of her own and was facing a divorce. Before sentencing, Pilon's counsel filed a sentencing memorandum which referenced an attached letter from Pilon containing this information (the specifics of her illness were in her presentence report); this information was, however, a small part of Pilon's sentencing argument. At her sentencing hearing, Pilon's attorney's argument focused almost entirely on her loyalty to her husband, her loyalty to the Washitaw Nation, and the claim that Pilon may have thought there was a chance of returning the money to her investors. The hardship on her family was only mentioned in passing at the beginning of her counsel's argument.

The district court was not persuaded by Pilon's arguments for leniency. After conducting an analysis of the sentencing

factors, and then pronouncing its sentence, the court further
explained:

> I also note that some of the very same things
> that you seek the Court to be sympathetic
> regarding, for example, the fact that the
> primary caregiver will now be imprisoned
> and that there's limited financial means for
> your family, those were considerations that
> you didn't give to the victims in the case
> earlier on when they were in limited financial
> places.

This statement demonstrates that the district court consid-
ered Pilon's arguments about her age, her role as caregiver,
and the hardship on her family, but found that these consider-
ations were outweighed by the need for her sentence to reflect
the seriousness of her offense. *See* 18 U.S.C. § 3553(a)(2)(A).

This court has recognized that a sick, young child who
requires special care presents an extraordinary family circum-
stance that the court must consider in selecting its sen-
tence—and a statement that the circumstance is the defen-
dant's fault is not adequate consideration. *United States v.
Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008). Nonetheless, Pilon's
family hardship argument was not a major part of her sentenc-
ing strategy, and the district court gave consideration commen-
surate with the argument that was made. The district court
demonstrated that it had read her letter and considered her
family hardship, but thought that the circumstances did not
outweigh the seriousness of her offense. *Cf. Schroeder*, 536 F.3d
at 751 (holding that summarily blaming the family hardship on

the defendant was insufficient consideration where the defendant made family hardship a focal point by providing medical documentation, offering testimony about the family's hardship, and making the circumstances a key point of argument at sentencing).

Further, by Pilon's own admission, her older daughter has cared for her son with cancer for some time. Her son is not a minor. *Cf. Schroeder*, 536 F.3d at 750-51 (child was daycare age). Further, when Pilon was finally arrested for her crime, she was found in North Carolina (for medical reasons) far from her son in Illinois. The district court adequately considered Pilon's mitigation arguments. *See United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010) ("the fact that the district court acknowledged this argument is dispositive—as long as a sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely, the sentence imposed will be found reasonable"); *cf. Schroeder*, 536 F.3d at 756 (holding that a district court's rejection of an argument for an inappropriate reason was error). Finally, Pilon's arguments about her health and age were not exceptional. *See United States v. Moreland*, 703 F.3d 976, 991 (7th Cir. 2012) ("As for age and infirmity, age 59 is not elderly in our society; the elderly do not have a license to commit crime, and adequate medical care is available in federal prisons.") (citations omitted). While the court is sympathetic to the tragedy of leaving the care of a son with cancer to an already burdened family member, the district court did not fail to adequately consider Pilon's arguments.

### D. Substantive Reasonableness of Pilon's Sentence

Pilon's last argument builds upon her mitigation arguments by adding an argument that her personal characteristics and low criminal history put her, statistically, at a very low risk of recidivism, and all things considered a sentence of 78 months' incarceration was substantively unreasonable. "A correctly calculated, within-Guidelines sentence is entitled to a presumption of reasonableness." *United States v. Barnes*, 660 F.3d 1000, 1010 (7th Cir. 2011). "To sustain the presumption, a district court need provide only a justification for its sentence 'adequate to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.* (quoting *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009)).

Here, Pilon argues that her age and health, her family ties, her nonexistent criminal history, and her statistically low chance of recidivism make her sentence substantively unreasonable. But the district court found that her crime was very serious, and the fact that it involved "preying upon weak people" who "were targeted for their vulnerability to be gullible enough to think that this was going to save them during some challenging times and, instead, it was exactly the thing that pushed them over the cliff" was "an extremely aggravating factor." *See* 18 U.S.C. § 3553(a)(2)(A) (the court must consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"). Moreover, while Pilon argues from statistics about recidivism, the court assessed her individually, and considering her refusal to recognize the jurisdiction of the court and the laws of the United States in the context of her loyalty to her husband and the

Washitaw Nation found that Pilon was "someone who is prone to recidivism and not acceptance, someone who is prone to hiding the reality of the situation rather than accepting the remorseful reality of it." Finally, the district court noted that Pilon's scheme:

> went on for a period of years, it had a broad base with numerous victims, [and so it] requires a sentence that will both be a sanction for the defendant as well as a message to others who would consider such a scheme, that they shouldn't do it, because the sentence will be one that is serious enough to deter the conduct of others in the future.

Accordingly, the district court believed that Pilon's sentence was justified by the need for general and special deterrence and because of the seriousness of her offense. The district court's findings and rationales were not erroneous and they provide a sufficient justification for Pilon's presumptively reasonable sentence.

### III.

For the foregoing reasons, Pilon's sentence is AFFIRMED.