BARKETT, Circuit Judge,
concurring, in part, and dissenting, in part:
I concur in the majority opinion but for its determination that John Docampo’s sentence of 22.5 years is reasonable. I believe a sentencing court’s passing mention that it has considered the 28 U.S.C. § 3553(a) factors without more analysis, as in this case, provides an insufficient basis for appellate review and consequently is procedurally unreasonable. I further believe, under the facts presented, that Docampo’s sentence is substantively unreasonable, a conclusion only bolstered by the far lower sentences imposed on all of his significantly more culpable co-conspirators.
I. BACKGROUND
At the time of his arrest, Docampo had just turned eighteen and had no prior criminal record. His crime stemmed from a fictional robbery opportunity presented by an undercover agent to Israil Reyes, who brought in two associates, Luis Alex Gutierrez and Sebastian Luengas. Those three men met with the undercover agent and conducted extensive planning before Docampo was ever involved. Only days before the planned robbery, Luengas met with Edwardo Lorenzo and Docampo and asked if they wished to participate. Although Lorenzo declined to participate in the robbery, he agreed to give a gun to Docampo, who wanted to take part. It is unclear whether, at that point, Docampo planned to use this firearm for the robbery. On the day of the robbery, Christian Carmona and David Powell, two other defendants who had also joined the group after the initial planning, met with Docampo and Gutierrez at Luengas’s residence. They decided that they needed another firearm, so they went to retrieve the gun that Docampo had received from Lorenzo and gave it to Reyes.
Luengas and Powell — both seventeen-year-old juveniles — were charged in state court as adults, pled guilty, and received only probation.[1] Reyes, Gutierrez, and Docampo were charged in federal court with counts of conspiracy to possess cocaine and possession of a firearm in furtherance of the conspiracy. Reyes and Gutierrez, who had actually planned the robbery, both pled guilty and agreed to testify against Docampo. Reyes ultimately received a 180-month sentence.[2] Gu *1104 tierrez received the statutory mandatory minimum of 60 months for the firearms charge and no additional time for the conspiracy. Docampo, who was pressured by his father to reject any plea deal, went to trial and was subsequently convicted of both charges. At sentencing, a psychiatrist described Docampo as someone who “functioned at the level of a 16-17 year old,” and testified that he completely submitted to his father’s instructions that he not enter a plea. The judge sentenced Docampo to 270 months — 60 months for the firearms charge and 210 months for the conspiracy — because “we’ve got to stop [the continuing rise of gang violence]. The community expects it to stop.” Thus, Docampo’s conspiracy sentence, after going to trial, was seventy-five percent greater than that of Reyes, who was the ringleader of the robbery.[3] None of the other co-conspirators received any time for the conspiracy charge.
II. DISCUSSION
Pursuant to United States v. Booker, appellate courts must review criminal sentencing for “unreasonableness.” 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); see also Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).[4] What is reasonable falls within the discretionary purview given to the sentencing judge. However, review under an abuse of discretion standard is not simply a rubber stamp. See Gall, 128 S.Ct. at 607 (Alito, J., dissenting) (“Appellate review for abuse of discretion is not an empty formality. A decision calling for the exercise of judicial discretion ‘hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.’ ”) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)); see also United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir.2008) (“[It] remains true that the district court’s choice of sentence is not unfettered.”).
Our two-stage review ensures that district courts impose a sentence that is both procedurally reasonable and substantively reasonable in light of the § 3553(a) factors. Gall, 128 S.Ct. at 600. The abuse of discretion standard “applies to appellate review of all sentencing decisions — whether inside or outside the [Sentencing] Guidelines range.” Id. at 596. WTiile we acknowledge that there is a “range of reasonable sentences from which the district court may choose,” United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005), no appellate court can presume that a sentence outside the Guidelines range is unreasonable, Rita, 551 U.S. at 355,127 S.Ct. 2456, nor does this court apply a “presumption of reasonableness” for sentences that fall within the Guidelines, Talley, 431 F.3d at 787-88 (“[W]e reject the argument of the United States that a sentence within the Guidelines range is per se reasonable .... After Booker, our ordinary expectation [that a within-Guidelines sentence is reasonable] still has to be measured against the record .... ”).
The Supreme Court sentencing cases have incontrovertibly established that a reasonableness inquiry must be heavily grounded in the specific facts of the case at hand — not simply the broad criminal statute under which the defendant was charged. The sentence must be properly individualized to the defendant, both pro *1105 cedurally and substantively. .In this case, for the reasons expressed below, the sentence imposed on Docampo was neither procedurally nor substantively reasonable.

A. Procedural Reasonableness

The procedural sentencing requirements are straightforward — the district court is required to (1) not base a sentence on clearly erroneous facts; (2) properly calculate the Guideline imprisonment range; (3) treat the Guidelines as advisory rather than mandatory; (4) consider all of the § 3553(a) factors; and (5) adequately explain its reasoning. Gall, 128 S.Ct. at 596. However, application of these requirements, particularly the last three, can be complex.
First, the Supreme Court, in holding that the Guidelines are “advisory,” has made clear that a “district court[] must treat the Guidelines as the starting point and the initial benchmark,” Kimbrough, 128 S.Ct. at 574 (quotation omitted), it must give them “respectful consideration,” id. at 570, and it must “take them into account,” Booker, 543 U.S. at 264, 125 S.Ct. 738. However, the Supreme Court has also declared that the Guidelines “now serve as one factor among several courts must consider in determining an appropriate sentence,” Kimbrough, 128 S.Ct. at 564 (emphasis added), and a district court may “tailor the sentence in light of other statutory concerns,” id. at 570 (quotation omitted). Furthermore, a sentencing court “may not presume that the Guidelines range is reasonable.” Gall, 128 S.Ct. at 596-97 (emphasis added); see also Nelson v. United States, — U.S. —, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009) (“The guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.”).
There is, of course, a wide range between a “starting point warranting respectful consideration” and “no presumption of reasonableness.” Some of the Supreme Court Justices have expressed serious concern about how to apply the Guidelines given the latent ambiguity in their advisory nature: “[I]f sentencing judges attributed substantial gravitational pull to the now-discretionary Guidelines, if they treated the Guidelines result as persuasive or presumptively appropriate, the Booker remedy would in practical terms preserve the very feature of the Guidelines that threatened to trivialize the jury right.” Rita, 551 U.S. at 390, 127 S.Ct. 2456 (Souter, J., dissenting); see also id. at 366, 127 S.Ct. 2456 (Stevens, J., concurring) (“I am not blind to the fact that, as a practical matter, many federal judges continued to treat the Guidelines as virtually mandatory after our decision in Booker.”)[5]
To vindicate the right established in Booker that the Guidelines cannot be de jure mandatory, meaningful appellate sentencing review must assure that district courts are not simply treating them as de facto mandatory. The recognition of any right must be paired with a mechanism by which that right can be both interpreted and enforced. Thus, it is the responsibility of appellate courts to ensure that sentencing judges make a concerted effort to *1106 reach independent conclusions about the appropriateness of a sentence in each specific case. We can only do so by ascertaining if the Guidelines served as just one of the factors that contributed to the determination of the sentence and not its sole basis. This in turn requires a close examination of the district court’s reasoning for imposing a given sentence — another procedural reasonableness requirement.
Congress requires the district court to “state in open court the reasons for its imposition of the particular sentence,” § 3553(c), and before doing so, the court must consider each of the factors delineated in § 3553(a) to arrive at the appropriate sentence.[6] It is not easy, however, to strike the proper balance between requiring that a judge offer a “sufficient explanation” for the sentence and overburdening a judge by demanding an in-depth discussion of every sentencing decision. The Supreme Court has directly acknowledged this difficult task, noting that “a public statement” of a judge’s reasons provides “the public with the assurance that creates [] trust [in the judicial institution]” but that it does not “read the [§ 3553] statute (or our precedent) as insisting upon a full opinion in every case.” Rita, 551 U.S. at 356, 127 S.Ct. 2456. The Court instead offered the following guidance: “The sen-fencing judge should set forth enough to satisfy the appellate court that he has considered the parties’ arguments and has a reasoned basis for exercising his own legal decisionmaking authority,” id. (emphasis added), and “must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing,” Gall, 128 S.Ct. at 597 (emphasis added).
What is “enough” or “adequate” depends upon the circumstances of the particular case at hand:
Circumstances may well make clear that the judge rests his decision upon the Commission’s own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a) — that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way — or argues for departure, the judge normally need say no more.
Rita, 551 U.S. at 357, 127 S.Ct. 2456 (emphasis added); see also id. at 359, 127 S.Ct. 2456 (finding that if the case is “sim *1107 pie,” and “the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively”). Thus, less may be required if a case is “simple” or “typical.” The logical corollary of this conclusion, however, is that more is required when a judge is faced with an atypical case or the defendant argues that a departure from the Guidelines is warranted.
The courts of appeals have struggled with the depth of explanation required. The Tenth Circuit and a panel decision in the Seventh Circuit have held that conclusory sentencing opinions are sufficient. See United States v. Cereceres-Zavala, 499 F.3d 1211, 1217 (10th Cir.2007) (requiring only “a general statement of the reasons for its imposition of the particular sentence” as opposed to a “specific explanation”) (quotations omitted); United States v. Gammicchia, 498 F.3d 467, 468-69 (7th Cir.2007) (finding the § 3553(a) factors “vague and nondireetional” and not requiring any mention of the factors so long as the judge “said” he considered them). On the other hand, the First and Sixth Circuits, and another panel of the Seventh Circuit, have required a specific discussion of the § 3553(a) factors, at least in certain circumstances. See United States v. Cirilo-Munoz, 504 F.3d 106 (1st Cir.2007) (remanding the case because of the inadequacy of the sentencing explanation); id. at 118 (Torruella, J., concurring) (stating that the district court’s analysis and reasons must be “tested against the record of the case to determine whether the reasoning is supported by the record, and [to determine] ultimately, whether the sentence is reasonable”); United States v. Thomas, 498 F.3d 336, 339-40 (6th Cir.2007) (concluding that the proper review requires the appellate court to examine the sentencing transcript to determine whether the sentencing court adequately considered the relevant § 3553(a) factors and clearly stated its reasons for imposing the chosen sentence); United States v. Miranda, 505 F.3d 785, 792, 796 (7th Cir.2007) (noting that “when a court gives little or no attention to the defendant’s principal argument ... we cannot have confidence that the judge adequately considered the section 3553(a) factors ... [and therefore is] likely to have committed an error or oversight” and further stating that “a rote statement that the judge considered all of the relevant factors will not always suffice”) (quotations omitted).
Our own circuit in United States v. Scott has held that “nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.” 426 F.3d 1324, 1329 (11th Cir.2005) (emphasis added). We have subsequently held in Talley, that an “acknowledgment by the district court that it has considered the defendant’s arguments and the factors in section 3553(a) is sufficient under Booker.” 431 F.3d at 786.
Based on the language of the Supreme Court sentencing cases, I believe that, for atypical or non-simple cases, it is not enough for a district court to simply state that it has “considered the § 3553(a) factors.” Our previous holdings do not free the district court from the requirement that it adequately explain its reasoning nor free us from our obligation to ensure that all the § 3553(a) factors were truly considered. See Rita, 551 U.S. at 366, 127 S.Ct. 2456 (Stevens, J., concurring) (“Booker’s standard of review ... requires [ ] district judges to consider all of the factors listed in § 3553(a) and to apply them to the individual defendants before them.”). Thus, while a mechanical discussion of each § 3553(a) factor may not be necessary in every case, a district court has a responsibility to analyze the relevant factors on the record. These would include a *1108 particular § 3553(a) factor raised by a defendant, or one clearly implicated by the specific facts of that case. To the extent that our circuit’s cases are interpreted to hold otherwise, I believe such an interpretation is erroneous as applied to non-typical cases.[7]
Due process requires a rational basis for judicial decisions — especially when ordering the incarceration of a defendant. We cannot legitimately be deferential to a sentencing determination until we first understand its foundation. It bears emphasizing that requiring a sufficiently detailed record does not undermine the sentencing court’s ultimate discretion. I do not in any way suggest that an appellate court substitute its own view of the appropriate sentence for that of the district judge, who is better able to assess the credibility of sentencing witnesses, including the sincerity of a defendant’s remorse or the potential for rehabilitation. I simply observe that an appellate court must be able to thoroughly understand the basis for the sentencing court’s decision in order to properly review it.
Applying the Congressional dictates here, Docampo’s sentence is procedurally unreasonable because the district court did not appear to have considered the § 3553(a) factors on an individualized basis, nor did it adequately explain its decision. This is anything but a typical or simple case. We are considering a fictional robbery where Docampo, who had just turned eighteen, was the only person to go to trial, was not the subject of the sting but rather only a peripheral player in the conspiracy, and yet was sentenced to a drastically longer sentence than every other co-conspirator. The sentencing record reveals little explication, aside from the court’s statement that it had “consider[ed] the advisory sentencing guidelines and all of the [§ 3553(a)] factors.” The judge’s only comments centered on Docampo’s voluntary participation in the crime, the potential violence that might have resulted had the firearms been used, and the general rise of gang violence — after which the judge opined, “[W]e’ve got to stop it. The community expects it to stop.” There was no evidence, however, tying Docampo to any conduct other than that for which he was convicted — joining the conspiracy at the last minute and transferring a gun from one person to the ringleader. More importantly, the judge made no mention at sentencing of the “nature and circumstances” of the actual crime that did occur or Docampo’s “history and characteristics”- — such as the absence of a criminal record or his biological or psychological age.[8] Without more on the record, it is *1109 hard to say whether the judge presumed that the Guidelines range was reasonable or considered any of the § 3553(a) factors save one — the abstract principle of “general deterrence.”
When a court has given little indication it has taken into account the pertinent facts specific to the case, it constitutes an abuse of discretion:
[T]he district court must give some weight to the factors in a manner that is at least loosely commensurate with their importance to the case, and in a way that achieves the purposes of sentencing stated in § 3553(a). Where it does not, and instead commits a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case, we must remand for resentencing. Indeed, if we could not say so here, we would come perilously close to holding that appellate review is limited to procedural irregularity, so long as the district court says it has reviewed all of the Section 3553(a) factors. We do not read Supreme Court precedent as having so eviscerated appellate review at the same time that it has mandated the appellate courts to continue to review sentences for reasonableness.
Pugh, 515 F.3d at 1203-04 (quotations omitted). While Pugh dealt with whether it was unreasonable for the district court to have deviated below the Guidelines, its conclusion is no less true in cases where the district court sentenced within the Guidelines but the facts may dictate that a reasonable sentence should, in fact, be below the Guidelines.
Because the sentencing judge here did not adequately grapple with the pertinent § 3553(a) factors to fashion an individualized sentence, I would vacate and remand Docampo’s sentence for reconsideration.

B. Substantive Reasonableness

Our substantive review asks whether the specific sentence imposed is reasonable and supported by the § 3553(a) factors. Gall, 128 S.Ct. at 600. Black’s Law Dictionary defines “reasonable” as “[f]air, proper, or moderate under the circumstances.” The Oxford English Dictionary defines it as “proportionate” or “of such an amount, size, number, etc., as is judged to be appropriate or suitable to the circumstances or purpose.” The common theme is that reasonableness is circumstance-dependent; in other words, it must be determined in the context of each specific case. For this reason the Supreme Court has said that “[w]hen conducting this [sentencing] review, the court will, of course take into account the totality of the circumstances.” Gall, 128 S.Ct. at 597.
The overarching aim of sentencing is to achieve proportionality — that is, we are attempting to impose a punishment that, as the statute expressly mandates, is “sufficient, but not greater than necessary, to comply with the purposes [of criminal sentencing].” § 3553(a) (emphasis added). Consideration of the § 3553(a) factors was required by Congress to achieve this proportionality.
The very first factor that Congress instructs judges to consider emphasizes the individual element of the inquiry: “the nature and circumstances of the offense and the history and characteristics of the defendant.” Id. The statute then sets out multiple purposes to weigh when ascertaining the appropriate length of a sentence:
[T]o reflect the seriousness of the offense, to promote respect for the law, *1110 and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
Id. While two of the purposes are broad and abstract — “promote respect for the law” and “afford adequate deterrence to criminal conduct” — the other four focus on the specific offense and the specific defendant. Furthermore, the Supreme Court has noted that the Sentencing Guidelines themselves have the fundamental goal of “avoid[ing] excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” Booker, 543 U.S. at 265, 125 S.Ct. 738 (emphasis added).
To preserve the flexibility to individualize and avoid sentencing in the abstract, an intensive fact-based inquiry is necessary to determine if a sentence is indeed reasonable. Accordingly, a sentence is substantively unreasonable if the individualized facts of the case are not properly taken into account, and a judge simply focuses on § 3553(a)’s generally-applicable principles. See, e.g., Gall, 128 S.Ct. at 607 (Alito, J., dissenting) (“[Wjhen a trial court is required by statute to take specified factors into account in making a discretionary decision, the trial court must be reversed if it ‘ignored or slighted a factor that Congress has deemed pertinent.’ ”) (quoting United States v. Taylor, 487 U.S. 326, 337, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). A reviewing court reads out of § 3553(a) every “individualization” factor if it always deems a sentence reasonable when a district judge has grounded the decision solely in the abstract principles of “deterrence” and a need to “promote respect for the law.”
When we ask if the district court has imposed a sentence “sufficient, but not greater than necessary,” we essentially pose two separate questions: (1) Is the sentence enough punishment? and (2) Is the sentence too much punishment? Appellate courts have had no difficulty finding unreasonableness when asking the former. See, e.g., Pugh, 515 F.3d at 1179 (finding that probation for a possessor of some child pornography was insufficient). We should likewise be willing to find that, in a case that warrants it, “a within-Guidelines sentence is ‘greater than necessary’ to serve the objectives of sentencing,” Kimbrough, 128 S.Ct. at 564 (quoting § 3553(a)). Our appellate sentencing review should not develop into a one-way rachet upwards.[9] Just as the district court has an obligation not to assume the Guidelines are automatically reasonable, we too — as a circuit that does not apply a reasonableness presumption — are obligated to ask whether a within-Guidelines sentence is reasonable without any thumb on the scale. Thus, reiterating what we have previously noted, there are “many instances where the Guidelines range will not *1111 yield a reasonable sentence .... In some cases it may be appropriate to defer to the Guidelines; in others, not.” United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006).
There is no doubt in my mind that Docampo’s sentence is far “greater than necessary” to comply with the sentencing goals. A psychiatrist testified that he was functioning as a sixteen or seventeen year old and was completely submissive to his father. He had no criminal history.[10] He will now be incarcerated until he is over forty years old. Had he been only two months younger at the time of the fictitious robbery, he would have been tried in state court along with the other juveniles who received probation.[11] The district court gave no weight to any of the factors that bore on this particular defendant and this particular attempted crime. Indeed, there is a total absence of case-specific analysis or consideration of the “totality of the circumstances.” Rather, the judge based the justification of the sentence solely on the abstract principle of deterrence and the need to “make an example” out of Docampo — considerations which are at odds with the individualized sentencing required by the Sentencing Guidelines and Booker.
I would also note that the majority opinion itself focuses on only one § 3553(a) factor in reaching its conclusion that the sentence was substantively reasonable— whether Docampo was “similarly situated” to his co-conspirators per § 3553(a)(6). The majority’s analysis is limited to why Docampo is not similarly situated, forgoing any discussion of the other “individualization” factors that counsel against upholding such an extreme sentence.[12] This *1112 emphasis is inconsistent with the holistic approach mandated under our substantive review.
Moreover, as to the specific “similarly situated” factor, the majority opinion appears to creates a false dichotomy. The fact that there is no uniformity requirement does not then give a sentencing court carte blanche to impose radically disproportionate sentences. While our case law may not treat the defendants who agreed to cooperate with the government or those who were tried in state court as “similarly situated” to Docampo such that they should have been given uniform sentences, the extreme disparity that has occurred here cannot help but bolster the conclusion that Docampo’s punishment was excessive. The fact that Docampo’s co-conspirators received radically lower sentences undermines the argument that a sentence of twenty-two years and six months was required in order to be “sufficient” but was not “greater than necessary.” Thus, the disparities in their sentences must still play some role in our assessment of the “totality of the circumstances.” Indeed, it is hard to escape the view that Docampo, in essence, is being punished for exercising his right to a jury trial. See, e.g., Blackmon v. Wainwright, 608 F.2d 183, 184 (5th Cir.1979) (“[A] defendant cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty.”) (quotation omitted).[13]
Because I do not believe Docampo received an individualized, or proportional, or reasonable sentence, I respectfully dissent.

. Carmona was also seventeen years old but was killed in an unrelated crime before further criminal proceedings could take place.

. Reyes initially received a sentence of 168 months for the conspiracy count and the statutory minimum of 60 months for the firearms count. He then received a four-level reduction for his testimony against Docampo, bringing down his sentence to approximately 180 months — in essence, 120 months for the conspiracy and the mandatory 60 months for the firearm.

. That is, Docampo received 210 months for the conspiracy while Reyes received 120 months. See supra n. 2.

. I will refer to this set of cases collectively as "the Supreme Court sentencing cases.”

. Not only have district courts now become used to relying on them, but the Guidelines inevitably have a considerable anchoring effect on a district court’s analysis:
Anchoring is a strategy used to simplify complex tasks, in which numeric judgments are assimilated to a previously considered standard. When asked to make a judgment, decision-makers take an initial starting value (i.e., the anchor) and then adjust it up or down. Studies underscore the significance of that initial anchor; judgments tend to be strongly biased in its direction.
Nancy Gertner, What Yogi Berra Teaches About Post-Booker Sentencing, 115 Yale L.J. Pocket Part 127 (2006), http://www. thepocketpart.org/2006/07/gertner.html (quotations omitted).

. Section 3553(a) provides:
The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) [the Sentencing Guidelines range]
(5) any pertinent policy statement [issued by the Sentencing Commission]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

. Moreover, the sentencing judge should be able to articulate the rationale that justifies the actual number of months or years that make up a defendant’s sentence, whether that number is within or outside the Sentencing Guidelines. A reasonable sentence is one for which there is an explanation of how the particular length of the imposed sentence corresponds to the individual sentencing needs of the particular defendant. For example, how does a sentence of fifteen years, as opposed to a sentence of five or ten years, or twenty-two years for that matter, serve the needs of individual and general deterrence while also addressing the nature of the crime and the individual characteristics of the defendant in a given case? The number of years cannot be determined simply by an individual judge’s gut feeling. As a society that values due process, we must have some rationalization for every step of our judicial system. There should be a transparent, logical, and reasonable justification to support the amount of jail time prescribed for a particular defendant based on the § 3553 factors.

. The judge’s only discussion of any details particular to Docampo occurred before her sentencing decision in a response to his lawyer's assertion that Docampo had an impressive job history for a teenager. The judge questioned whether Docampo's job history was as positive as his lawyer suggested, pointing to the fact that Docampo had been dis *1109 missed for poor performance by one employer and had quit some jobs.

. We must not lose sight of the fact that sentence uniformity is a two-sided coin. It does not simply mean ensuring that similarly situated defendants are sentenced similarly. It also entails "[the] need to avoid unwarranted. similarities among other co-conspirators who were not similarly situated.” Gall, 128 S.Ct. at 600 (emphasis added). That is, we must avoid a "false uniformity.” See United States v. Cabrera, 567 F.Supp.2d 271, 273 (D.Mass.2008) ("False uniformity occurs when we treat equally individuals who are not remotely equal because we permit a single consideration ... to mask other important factors.”). Even when a charged crime is the same, the manner in which it was committed, the degree of culpability, and the background of the defendant are often very different. In other words, sometimes deviations from the Guidelines — and not its mechanical application — are actually needed to achieve true sentencing uniformity.

. I do not find that Docampo’s bravado boasting to his co-conspirators that he was "experienced” in robberies undercuts the fact that he has no criminal record. His boasts may have had no basis in fact. Regardless, no evidence of any prior criminal "experience” was proven by the State, at sentencing or otherwise.

. While the law requires that Docampo be tried as an adult the moment he turned 18— to be treated no differently than older adults during the prosecution stage — , Docampo's age is still relevant in considering the "totality of the circumstances” for sentencing purposes. As the Supreme Court has noted in the death penalty context, “Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18.” Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).
There is no doubt that, for the sake of efficient administrability, our judicial system must draw a categorical line somewhere to differentiate between "juveniles” and "adults.” But that legal necessity does not change the psychological and sociological facts found in Roper. (1) that "juveniles will be less susceptible to deterrence” because there is a "[remote] likelihood that the teenage offender has made the kind of cost-benefit analysis that attaches any weight to [serious punishment]”; (2) that "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young ... often resulting] in impetuous and ill-considered actions and decisions”; (3) that "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure”; and (4) "that the character of a juvenile is not as well formed as that of an adult.” Id. at 561, 569-72, 125 S.Ct. 1183 (emphasis added) (quotations omitted). Nor does that necessity preclude us from considering the relevance of these facts as they pertain to consideration of § 3553(a)(l)’s "characteristics of the defendant.” On the contrary, we are obligated to do so.

. The majority states that Docampo does not argue that his sentence is substantively unreasonable based on any other factor. This is incorrect. Docampo explicitly argues that the “record does not reflect that the court considered ... 'the nature and circumstances of the offense,' § 3553(a)(1); the ‘history and characteristics of the defendant,’ § 3553(a)(1); ... and whether the sentence imposed was 'sufficient but not greater than necessary, to comply with' this and other purposes of sentenc *1112 ing, § 3553(a).” [Bl. Br. 42]. He then cites to specific details that he asserts render the sentence unreasonable:
Docampo’s lack of serious prior criminal record, his strong community and family support, his young age, his emotional immaturity, the sentences of the codefendants, the fact that the “crime” was a fictionalized sting, and that there was no victim, as well as the role his father played in aborting his cooperation proffer and insisting that he take the case to trial (another example, according to Dr. Maher, of Docampo’s emotional immaturity, that in a childlike fashion he allowed his father to dictate the course of his defense), and similar factors.
[Bl. Br. 43],

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.